ORDERED UNSEALED on 03/06/2023   s/ anthonye
SEALED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>FERNANDO SIMON-DOMINGO (1),<br>JONATHAN MANUEL FLORES (2),<br><br><br>Defendants. | Case No.: _____'23  MJ0621  BLM_____<br><br>C O M P L A I N T<br><br>Title 21, U.S.C., § 84l(a) (1) – Distribution of Methamphetamine; Title 18, U.S.C., § 111 (b) – Assault on a Federal Officer with a Deadly or Dangerous Weapon; and Title 18, U.S.C., § 924 (c) –Brandishing a Firearm in Furtherance of a Crime of Violence |

The undersigned complainant being duly sworn states:

Count 1

On or about February 6, 2023, within the Southern District of California, defendant FERNANDO SIMON-DOMINGO did knowingly distribute 500 grams and more, to wit: 916.6 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance; in violation of Title 21, United States Code, Section 841(a)(1).

Count 2

On or about February 10, 2023, within the Southern District of California, defendant FERNANDO SIMON-DOMINGO did knowingly distribute 500 grams and more, to wit: 1940.5 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance; in violation of Title 21, United States Code, Section 841(a)(1).

/ /

/ /

/ /

/ /

Count 3

On or about February 17, 2023, within the Southern District of California, the defendant JONATHAN MANUEL FLORES, did forcibly assault a federal officer using a deadly and dangerous weapon, to wit: one (1) Glock, Model 45, 9mm, pistol bearing serial number BUKC318, while such federal officer was engaged in his official duties; in violation of Section of Title 18, United States Code, Section 111 (b).

Count 4

On February 17, 2023, within the Southern District of California, the defendant, JONATHAN MANUEL FLORES knowingly, used, carried, and brandished a firearm, to wit: one (1) Glock, Model 45, 9mm, pistol bearing serial number BUKC318,  during and in relation to a crime of violence for which the defendant may be prosecuted in a court of the United States, that is, Assault on a Federal Officer in violation of Title 18, United States Code Section 111 (b), as alleged in Count 3 of this complaint; in violation of Title 18, United States Code, Section 924 (c).

And the complainant states that this complaint is based on the attached probable cause statement, which is incorporated herein by reference.

_____
BANDON FARMER, Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this ___ day of February 2023.
**Feb 24, 2023**

_____
BARBARA L. MAJOR
United States Magistrate Judge

INTRODUCTION

During my duties as a Special Agent for the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), I have learned the following information from personal observations and having read reports prepared by other law enforcement officers.  The following does not contain all the information known to me or other federal agents and state and local officers regarding this investigation but does contain those facts believed to be necessary to establish the requisite probable cause for the violations alleged herein.

TRAINING AND EXPERIENCE

I am currently a Special Agent ("SA") with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and have been so employed since January 2019.  Before joining ATF, I was employed as a criminal investigator SA with the Naval Criminal Investigative Service ("NCIS') for approximately one year and five months.  Before joining NCIS, I was employed as a Border Patrol Agent with the United States Border Patrol for approximately six years.  Before joining the Border Patrol, I was a Police Officer with the Cape Girardeau Missouri Police Department for approximately eight years.  I am a graduate of the Federal Law Enforcement Training Center's Criminal Investigator's Training Program, and the ATF National Academy's Special Agent Basic Training course.  As an ATF SA, I have received training in federal firearms laws and have been the affiant on search and arrest warrants for such violations, to include investigations of persons prohibited from possessing firearms.  In this realm, I have authored affidavits for search warrants and complaints which have yielded evidence of federal criminal violations.

PROBABLE CAUSE STATEMENT

*Background of Investigation*

In June 2022, ATF Agents received information that identified FERNANDO SIMON-DOMINGO ("SIMON-DOMINGO") as a trafficker of firearms and narcotics within the Southern District of California. Between June 2022, and February 17, 2023, ATF Agents arranged a series of controlled purchases of firearms and narcotics with SIMON-DOMINGO through recorded communications using the social media platform Instagram. Agents

purchased firearms through SIMON-DOMINGO on June 8, 2022, December 12, 2022, January 10, 2023, January 24, 2023, February 6, 2023, and February 10, 2023. A query of the relevant databases determined that SIMON-DOMINGO does not currently hold, nor has he ever held, a Federal Firearms License to sell or manufacture firearms. On two occasions, Agents also purchased methamphetamine from SIMON-DOMINGO.

### Count 1 & Count 2

In February 2023, an ATF Special Agent, acting in an undercover capacity communicated with SIMON-DOMINGO via a series of recorded text messages and audio calls using the social media platform Instagram. During the communications, SIMON-DOMINGO offered to sell the undercover Special Agent ("UC-1") methamphetamine.

On February 6, 2023, ATF Agents arranged for the controlled purchase of approximately two pounds of methamphetamine from SIMON-DOMINGO. A surveilled and audio and video recorded meeting took place between SIMON-DOMINGO and UC-1 at a Walgreens parking lot at 7195 Broadway Lane, Lemon Grove, CA 91945 in the Southern District of California. During the meeting SIMON-DOMINGO sold UC-1 approximately 916.6 grams methamphetamine in exchange for $2,200.

On and before February 10, 2023, UC-1 communicated with SIMON-DOMINGO via a series of recorded text messages and audio calls using the social media platform Instagram. UC-1 agreed to purchase approximately three additional pounds of methamphetamine for $3,300. On February 10, 2023, a surveilled and audio and video recorded meeting took place between SIMON-DOMINGO and UC-1 at a Walgreens parking lot at 7195 Broadway Lane, Lemon Grove, CA 91945 in the Southern District of California. During the meeting SIMON-DOMINGO sold UC-1 approximately 1940.5 grams methamphetamine in exchange for $3,300.

### Count 3 & Count 4

On February 17, 2023, ATF Agents conducted a UC operation in San Diego, California to purchase a Glock pistol with a full auto conversion device (commonly referred to as a "Glock Switch") installed. The Glock pistol was later fully identified as a Glock, Model 45, 9mm, pistol bearing serial number BUKC318, loaded with an extended magazine

containing 20 rounds of 9mm ammunition with a full auto conversion device installed making the pistol a machinegun for $2,400 from an individual later identified as JONATHAN MANUEL FLORES.

Specifically, two ATF Special Agents, who are employees of ATF, acting in a UC capacity (hereinafter referred to as "UC-1" and "UC-2") and were engaged in the performance of their official duties throughout these events, made arrangements through SIMON-DOMINGO to meet with FLORES to purchase the above-described firearm.

On February 17, 2023, a surveilled and audio and video recorded meeting took place between UC-1, UC-2, and FLORES in a Walmart parking lot at 3382 Murphy Canyon Road, San Diego, CA, 92123 in the Southern District of California.  While in route to the meet location, SIMON-DOMINGO sent UC-1 a message stating that, "my people are there" indicating that SIMON-DOMINGO was brokering the firearm transaction and would not be at the location to introduce UC-1 to the associate, later identified as FLORES. SIMON-DOMINGO sent UC-1 the telephone number "XXX-XXX-8589" and advised UC-1 to call his associate because they were about to leave.

UC-1 and UC-2 arrived at the meet location (Walmart parking lot) driving an undercover vehicle ("UCV"). Upon arrival, UC-1 parked the UCV near an electric vehicle charging station in the southeast corner of the parking lot. UC-1 received a telephone call from the XXX-XXX-8589 phone number. Prior to answering the call, UC-1 observed someone waiving their arm out of the passenger window of a white Chevrolet Malibu sedan. UC-1 parked the UCV near the white Chevrolet Malibu.

Once parked, UC-1 and UC-2 rolled down the passenger window of the UCV and contacted the occupants of the white Chevy Malibu.

UC-1 exited the driver seat of the UCV and contacted FLORES in between the UCV and the Chevrolet Malibu. UC-1 asked FLORES to get into the UCV, but FLORES insisted on doing the deal in the Chevrolet Malibu. UC-1 told FLORES that UC-1 needed to see the firearm UC-1 intended to purchase.  FLORES indicated that the firearm was inside the white Chevrolet Malibu. UC-1 agreed to complete the deal in the Chevrolet Malibu with FLORES. FLORES entered the Chevrolet Malibu and sat in the rear passenger seat of the white sedan.

UC-1 entered the seat behind the driver sitting next to FLORES in the rear passenger seat. UC-2 remained seated in the UCV.

Also inside the vehicle was a male driver wearing a long sleeve yellow shirt, who FLORES referred to as "Emilio," and another occupant seated in the front passenger seat. FLORES was holding a black pistol in his lap that appeared to be the same Glock pistol in photographs and videos sent to UC-1 prior to the deal. The Glock pistol had an extended magazine inserted into the pistol and what appeared to be a machinegun conversion device (commonly referred to as a "switch") installed where the backplate is on a Glock pistol.

UC-1 requested to hold the firearm, but FLORES insisted on seeing the money first. FLORES wanted to count the money. UC-1 offered to count the money for FLORES instead of handing FLORES the money. FLORES confirmed the sale price of the firearm was $2,400. UC-1 removed $2,000 in pre-recorded ATF funds from UC-1's pocket and began counting the funds. FLORES asked "Emilio" to turn on the cabin lights to the vehicle so he could confirm the amount of funds.

As UC-1 finished counting the funds, FLORES functioned the slide (the function used to chamber a round in the pistol making it ready to shoot) and placed the muzzle of the pistol onto UC-1's ribcage. FLORES then stated, "Get the fuck out the car dog before I smoke you" while simultaneously grabbing the ATF funds from UC-1's hand. UC-1 began saying "easy bro, easy" as UC-1 exited the Chevrolet Malibu sedan in fear of his/her life. As UC-1 was exiting the Chevrolet Malibu, UC-1 was putting his/her hands in the air saying, "don't shoot me." The sedan fled from the parking lot at a high rate of speed as UC-1 exited the vehicle. The sedan fled the parking lot through the southern driveway that leads to Stonecrest Blvd so quickly that surveillance units were unable to maintain visual.

Following the incident, UC-1 and UC-2 were provided a photograph of FLORES and positively identified FLORES as the individual who robbed UC-1.

Additionally, ATF agents along with Officers of the San Diego Police Department (SDPD) and El Cajon Police Department (ECPD) learned that FLORES utilized the social media platform Instagram, account "Toomuchmotiion," to sell flavored vape pens, which are illegal in the state of California. It was also determined that FLORES posted a picture of $100

dollar bills on his Instagram account. One of the bills showed a partial serial number that matched a pre-recorded $100 bill taken from UC-1 during the robbery.

UC-2, still acting in a UC capacity, contacted FLORES via Instagram and arranged to meet with FLORES to purchase the illegal flavored vape pens. FLORES told UC-2 to meet him at 116 Garrett Avenue, Chula Vista, California to purchase the illegal flavored vape pens.

Later, FLORES arrived at the meet location driving a 2017 Ford Escape bearing California license plate #7UEN246. As FLORES arrived at the meet location, SDPD officers initiated a felony traffic stop on the Ford Escape. FLORES was given commands to exit the driver's side of the vehicle. As FLORES exited the vehicle, officers observed what appeared to be a pistol located in the waistband of FLORES. Initially, FLORES was obeying officer's commands but suddenly moved towards the vehicle, removed the pistol, and tossed it into the vehicle. FLORES was then taken into custody without incident.

After FLORES was in custody, officers identified a passenger in the vehicle as the grandmother of FLORES. Officers also discovered a Glock pistol, with an extended magazine containing 20 rounds of 9mm ammunition, and a full auto conversion device installed making the pistol a machinegun. UC-1 identified the firearm as the same one FLORES stuck in his/her ribcage and threatened to "smoke" UC-1 as FLORES robbed UC-1. UC-2 also identified FLORES as the individual who robbed UC-1 earlier in the evening. FLORES's grandmother later stated to officers that FLORES threw the firearm into the vehicle near her feet in the floorboard of the front passenger compartment.

FLORES was ultimately booked into the San Diego County Central jail for the following state charges: 211 PC - Robbery, 29800(a)(1) PC - Felon in Possession of a Firearm, 32625(a) PC - Possession of a Machine Gun, 25850(c)(6) PC - Possession of a Loaded Firearm in a Public Place and 30305(a) PC - Felon in Possession of Ammunition.

## REQUEST FOR ARREST WARRANT

Finally, pursuant to the instant Complaint it is further respectfully requested that this Court issue warrants for the arrest of SIMON-DOMINGO and FLORES.

## REQUEST FOR SEALING

It is further respectfully requested that this Court issue an Order sealing, with disclosure permitted to defendant's counsel pursuant to an early disclosure agreement or Rule 16, Fed. R. Crim. P. or until further order of this Court, all papers submitted in support of this Complaint packet:  the Complaint, the Affidavit, Arrest Warrants, and the Motion to Seal. Sealing is necessary because the facts and evidence presented in the instant Complaint packet are relevant to an ongoing investigation, and premature disclosure of the contents of this Complaint packet may have a negative impact of this continuing investigation and may jeopardize its effectiveness.