ANDREW R. HADEN
Acting United States Attorney
ALICIA P. WILLIAMS
EVANGELINE A. DECH
California Bar Nos. 262823/326832
Assistant United States Attorneys
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
(619) 546-8917
alicia.williams@usdoj.gov
Attorneys for the United States

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>v.<br><br>JONATHAN MANUEL FLORES,<br><br>Defendant. | Case No. 23-CR-00512-CAB<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Date: April 4, 2025<br>Time: 9:00 a.m.<br>Judge: Hon. Cathy Ann Bencivengo |
|---|---|

    The United States of America, by and through its counsel, Andrew R. Haden, Acting United States Attorney, and Alicia P. Williams, and Evangeline A. Dech, Assistant United States Attorneys, hereby files its Sentencing Memorandum in the above-captioned case.

## I.

## INTRODUCTION

    The United States recommends the Court adopt the following Guidelines calculations and impose the following sentence:

**COUNTS 5 & 7**

<u>Guideline</u>                                                                                         <u>Level</u>

| | | |
|---|---|---|
| 1. | Base Offense Level [§ 2K2.1] | 26 |
| 2. | Adjustment for Multiple Counts | +1 |
| 3. | <u>Acceptance of Responsibility [§ 3E1.1]</u> | <u>-3</u> |
| | Total Offense Level | 24 |
| | Criminal History Category | I |
| | Guideline Range | 51-63 months* |
| | Recommended Custodial Sentence | 51 months |
| | Supervised Release | 3 years |
| | Special Assessment | $100 |

*The statutory maximum for Count 7 is 60 months.*

**COUNT 6**

For Count 6, pursuant to 18 USC § 924(c) and USSG § 2K2.4 (b), Defendant is subject to a mandatory minimum sentence of 84 months to run consecutive to any sentence imposed in Count 5.

| | |
|---|---|
| Recommended Custodial Sentence | 84 months |
| Supervised Release | 5 years |
| Special Assessment | $100 |

Ultimately, The United States recommends a total sentence of 135 months in custody followed by five years of supervised release and a special assessment of $200.

II.

<u>PRESENTENCE REPORT</u>

A Presentence Investigation Report ("PSR") was filed on July 2, 2024. ECF No. 122. As a preliminary matter Probation determined that the 2023 Guideline Manual was more favorable to Defendant, and thus used the 2023 manual to compute the guidelines.

  For Count 5, Probation begins its calculations with a base offense level of 14, because the assault on the officer involved a dangerous and deadly weapon, in this case a machine gun. PSR ¶ 46. Consistent with the plea agreement, Probation recommends a two-level upward adjustment under USSG § 2A2.2(b)(1), because the offense involved arranging for the Undercover Agent ("UCA") to meet Defendant at a Walmart parking lot. PSR ¶ 47. Probation also recommends a three-level upward departure pursuant to USSG § 2A2.2(b)(2), for brandishing or threatening the use of a dangerous weapon, as Defendant threatened use of the weapon by telling the UCA to get out of his vehicle before "I smoke you." PSR ¶ 48.

  For Count 6, Probation correctly notes that the guideline for a violation of 18 U.S.C. § 924(c) is USSG §2K2.4. The guideline sentence is the term of imprisonment required by statute. PSR ¶ 52. In this case, that would be a mandatory minimum sentence of 84 months.

  As to Count 7, Probation begins its calculations with a base offense level of 18 because the offense involved an automatic machinegun satisfying the criteria described in 26 U.S.C. § 5845(a)(6). PSR ¶ 53. Next, Probation recommends a four-level upward departure pursuant to USSG § 2K2.1(b)(1)(B) because Defendant and his co-conspirators knowingly sold a total of nine firearms to the ATF UCAs. PSR ¶ 54. Finally, Probation recommends another four-level upward departure pursuant to USSG § 2K2.1(b)(6)(B), because Defendant possessed the firearm in connection to another offense, the assault on the federal officer. PSR ¶ 56.

  Pursuant to USSG §3D1.4, Probation determined the Combined Adjusted Offense Level to be 27. PSR ¶¶ 58-61.

  Ultimately, Probation recommends this Court impose 51 months' custody in Count 5, 84 months' custody in Count 6 to run consecutive to the sentence imposed in Count 5 and impose 51 months' custody in Count 7 to run concurrently to the sentence imposed Count 5, for a total custodial sentence of 135 months. PSR ¶ 169. Probation further recommends this Court impose a term of supervised release of 3 years in Counts 5 and 7,

and a term of 5 years in Count 5. Probation declined to recommend a fine but did recommend a total special assessment of $300. PSR ¶¶ 178, 179.

### III.
### POINTS AND AUTHORITIES

A.  Offense Conduct

The facts of this case are detailed well in the plea agreement and PSR, which are incorporated herein by reference. Here, the United States provides a summary of the case to supply the Court with the basis for the United States guidelines calculations and sentencing recommendation.

Beginning in June 2022, Agents from the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) conducted a series of controlled buys of firearms and narcotics brokered by co-defendant Fernando Simon-Domingo. PSR ¶ 6. On February 17, 2023, Simon-Domingo reached out to a UCA to broker the sale of a Glock pistol with a fully automatic conversion device, "Glock Switch." PSR ¶ 12. As the agent was in route to purchase the firearm, Simon-Domingo advised the UCA he would not be present for the transaction, but instead, his "people" would be there. *Id.* When the UCA arrived in the designated Walmart parking lot, Defendant convinced the agent to complete the transaction in Defendant's car, a Chevrolet Malibu. PSR ¶ 13. Both Defendant and the agent entered the back seat of the car while a third occupant was in the driver seat. *Id.* Once inside the car, Defendant showed the agent a Glock pistol with an extended magazine inserted and a machinegun conversion device installed. PSR ¶ 14. Although the agent asked to hold the firearm, Defendant insisted the agent show and count the money first. PSR ¶ 15. The agent counted $2,000 in pre-recorded ATF funds for Defendant to see. *Id.* As soon as the agent finished counting, Defendant functioned the slide (the function used to chamber a round in the pistol making it ready to shoot), placed the muzzle of the gun onto the agent's ribcage, said "Get the fuck out the car dog before I smoke you," and snatched the agent's money from his hands. *Id.* The agent pleaded for Defendant to take it easy. PSR ¶ 16. As he feared

for his life, he begged Defendant to not shoot him. *Id.* The agent got out of the car and Defendant and the Malibu sped out of the parking lot. *Id.*

Following the incident, ATF agents and San Diego Police Department learned of Defendant's location. PSR ¶ 17. Through an undercover agent, law enforcement officers contacted Defendant to purchase an illegal vape pen. *Id.* Defendant arrived at the meet location with the same Glock pistol in his waistband. PSR ¶ 18. San Diego Police Department officers initiated a felony traffic stop and arrested Defendant. PSR ¶ 17. Following Defendant's arrest, officers recovered $1,900 in cash matching serial numbers of prerecorded ATF funds from Flores' home. PSR ¶ 18.




*Firearm seized from Defendant with installed conversion device*



*Metal machinegun conversion device removed from firearm*

5

B.  Guideline Calculations

The United States adopts the calculations outlined in the PSR.

C.  Acceptance of Responsibility

Defendant has demonstrated acceptance of responsibility and thus is deserving of the full three points under USSG § 3E1.1.

D.  Criminal History

With only 1 criminal history point Defendant is in criminal history category I. Despite having only 1 criminal history point, at age 20 Defendant's continued contacts with law enforcement is concerning.

E.  Victim Impact

The impact of this offense on the victim is outlined in paragraphs 26 and 27 of the PSR. The United States notes and underscores the position of the victim in this case.

F.  Personal History and Characteristics

The PSR details Defendant's personal history and characteristics. According to the PSR, he is in good health. Defendant began to struggle with substance abuse at age 12. The United States acknowledges the extreme difficulties Defendant experienced in his childhood as discussed in paragraphs 87 and 88.

A.  Analysis Under 18 U.S.C. § 3553(a)

After calculating the appropriate guideline range, this Court must consider the sentencing factors outlined in 18 U.S.C. § 3553(a) to determine the sufficient but not greater than necessary sentence. For the reasons set forth below, the United States recommends the following custodial sentence:

Count 5: 51 months

Count 6: 84 months, consecutive to Count 5

Count 7: 51 months, concurrent to Count 5

After considering the § 3553(a) factors, a total custodial sentence of 135 months is sufficient and not greater than necessary.

  i. *Nature and Circumstances of the Offenses*

The nature and circumstances of the offense committed in this case are extremely aggravating. While engaged in unlawful gun trafficking, Defendant robbed an undercover agent by placing a loaded machine gun in his ribcage while seated in the rear seat of a car. The aggravating factors in this situation are many. First, Defendant was engaged in multiple sales of firearms. Second, the firearm used in the robbery was loaded with a metal conversion device, or "Glock Switch" that allowed the firearm to shoot multiple rounds of ammunition with one click. With one misstep the robbery could have ended in a serious tragedy.

  ii. *History and Characteristics of Defendant (as reported in the PSR)*

Defendant's history and characteristics are mostly mitigating and support a sentence at the low end of the guideline range. Defendant was a teenager at the time he committed this offense. However, Defendant's conduct and activities around the time of the offense are concerning. The United States acknowledges that substance abuse likely played a role in Defendant committing the instant act, but it also appears that Defendant made intentional choices to leave his parents' home and the support of his mother and father to have more freedom to engage in conduct that his parents did not support. Prior to this incident Defendant was on a very dangerous path, not just engaging in drug use, but also engaging in selling firearms and vapes. When taken in totality, Defendant's history and characteristics support a downward variance.

  iii. *Need to Provide Deterrence and to Protect the Public*

In this case there is a need for the sentence imposed to promote deterrence and protect the public. First, both specific and general deterrence are concerns here. There is no disputing that prior to this offense, Defendant was headed down a very dangerous path, as his conduct was increasing in severity. The sentence imposed should deter Defendant

from continuing to engage in criminal activity, and also protect the public from future crimes of Defendant.

The sentence imposed should also deter the general public from engaging in similar behavior. Over the past few years, we have witnessed a significant uptick in the use of machine gun conversion devices to convert standard firearms to even more lethal machines with the capability to fire multiple rounds of ammunition with just one click. These converted machine guns are extremely dangerous. There is no question that machine guns with their "spray-like" capabilities, are more dangerous than standard firearms.[1] The circumstances surrounding Defendant's arrest is just one example of how these firearms could be utilized to facilitate crime. This Court must impose a sentence that deters individuals from manipulating standard firearms in order to turn them into dangerous killing machines.

    iv.    *Need to Avoid Unwarranted Sentencing Disparities*

Finally, the Court should impose a sentence that "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]" 18 U.S.C. § 3553(a)(6). Indeed, that is one of the goals of the Sentencing Guidelines themselves. *See* USSG § 1A1.3 ("Second, Congress sought reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders."). Thus, the Sentencing Guidelines calculations in this case already set forth a range of similar sentences for individuals similarly situated to Defendant who committed crimes similar to the ones committed by Defendant. A sentence of 135 months avoids unwarranted sentencing disparities.

//

//

---

[1] *See* https://www.live5news.com/video/2023/07/18/us-attorneys-office-other-law-enforcement-cracking-down-glock-switch-crimes/ (demonstrating the function of a machine gun conversion device).

B. <u>Recommended Sentence</u>

Ultimately, the United States recommends a sentence of 51 months' custody in Count 5, 84 months' custody in Count 6 to run consecutive to Count 5, and 51 months' custody in Count 7 to run concurrently to Count 5, for a total custodial term of 135 months. The United States recommends this Court impose a term of supervised release of 3 years in Counts 5 and 7, and a term of 5 years in Count 6, no fine and a total special assessment of $300.

## IV.

## CONCLUSION

The United States respectfully requests that the Court sentence Defendant as recommended herein.

DATED: <u>3/28/2025</u>                                  Respectfully submitted,

ANDREW R. HADEN
Acting United States Attorney

*s/ Alicia P. Williams*
ALICIA P. WILLIAMS
EVANGELINE DECH
Assistant United States Attorneys